**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BRIAN J. CLARK,**

                              **Plaintiff,**

**v.**                                                                **1:18-CV-1298 (NAM/CFH)**

**COCA-COLA BEVERAGES**
**NORTHEAST, INC.,**

                              **Defendant.**
_____

**APPEARANCES:**

Carlo Alexandre C. de Oliveira
Cooper, Erving Law Firm
39 North Pearl Street, 4th Floor
Albany, New York 12207
_Attorney for Plaintiff_

John V. Hartzell
Nolan & Heller, LLP
39 North Pearl Street
Albany, New York 12207
_Attorney for Defendant_

Peter Bennett
The Bennett Law Firm, P.A.
75 Market Street, Suite 201
Portland, Maine 04101
_Attorney for Defendant_

**Hon. Norman A. Mordue, Senior United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

         Plaintiff Brian J. Clark brings this action under the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101 _et seq_., Title I of the Civil Rights Act of 1991 ("Title I"), 42

U.S.C. § 1981a, and the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law

§ 290 *et seq*., asserting claims against Defendant Coca-Cola Beverages Northeast, Inc. for disability discrimination, failure to accommodate, and retaliation. (Dkt. No. 1). Now before the Court are the parties' cross motions for summary judgment. (Dkt. Nos. 44, 52). For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is granted.

## II.   BACKGROUND[1]

### A. Employment History

Coca-Cola Refreshments USA, Inc. ("CCR") employed Plaintiff from March 17, 2009 until September 29, 2017. (Dkt. Nos. 52-3, ¶ 1; 53-1, ¶ 1). Plaintiff worked at CCR's Albany Sales Center in a bargaining unit represented by Teamsters Union Local 294. (Dkt. Nos. 52-3, ¶ 2; 53-1, ¶ 2). The relevant terms and conditions of employment for the employees in the Albany bargaining unit are set forth in the Collective Bargaining Agreement ("CBA") between Defendant and Local Unions No. 294, 317, and 687 of the International Brotherhood of Teamsters. (Dkt. Nos. 52-3, ¶ 3; 53-1, ¶ 3). In September 2017, Defendant purchased the Albany Sales Center from CCR and agreed with the Teamsters Union to honor the existing terms of the CBA, including its seniority list. (Dkt. Nos. 52-3, ¶¶ 14, 15; 53-1, ¶¶ 14, 15). The seniority list defines the relative seniority rights of every bargaining member and is used in determining preference when more than one employee bids on an open position and the order in which employees select vacation time. (Dkt. Nos. 52-3, ¶ 16; 53-1, ¶ 16). The CBA contains a

---

[1] The facts have been drawn from the parties' Local Rule 7.1(a)(3) statements, (Dkt. Nos. 44-42, 52-2), and their responses and additional statements, (Dkt. Nos. 50-1, 53-1), and the parties' attached exhibits, depositions, and declarations (*see generally* Dkt. Nos. 44, 50, 52, 53). The Court notes that each of the parties' Local Rule 7.1(a)(3) statements contain facts that cannot, by any fair standard, be classified as undisputed. In sum, the parties abused the Rule 7.1(a)(3) process and presented alleged facts that are plainly contradicted by other evidence in the record or otherwise present legal argument as "fact," requiring the Court to conduct an exhaustive review of the record. This is precisely the problem that Local Rule 7.1(a)(3) seeks to prevent. Counsel are advised that future submissions in gross violation of Rule 7.1(a)(3) will not be considered by the Court.

grievance and arbitration procedure through which a bargaining unit member can assert alleged violations of the member's seniority rights by Defendant.  (Dkt. Nos. 52-3, ¶ 17; 53-1, ¶ 17).

### B.  Plaintiff's Injury and Medical Treatment

In March 2011, Plaintiff sustained a work-related back injury while working as a delivery driver for CCR.  (Dkt. No. 44-41, ¶ 7).  Plaintiff underwent spinal fusion surgery in February 2012.  (*Id.*).  In October 2012, Plaintiff returned to work as a member of the "General Warehouse" team, and due to his seniority, Plaintiff was able to successfully bid for a "Truck Jockey" position with a 50-pound lifting restriction to accommodate physical limitations stemming from his back injury.  (Dkt. No. 44-41, ¶¶ 11, 12; *see also* Dkt. No. 44-22, pp. 62–63).  In January 2016, Plaintiff reinjured his back while at work and went back on medical leave beginning January 9, 2016.  (Dkt. No. 44-41, ¶¶ 13, 14; *see also* Dkt. No. 44-22, p. 34).  When Plaintiff went out on medical leave in January 2016, the seniority clause of the CBA protected his seniority and employment for two years.  (Dkt. Nos. 52-3, ¶ 10; 53-1, ¶ 10).  Plaintiff never returned to work after his injury in 2016.  (Dkt. Nos. 52-3, ¶ 11; 53-1, ¶ 11).

While on medical leave, Plaintiff had a second back surgery in February 2017 and gastric bypass surgery in June 2017.  (Dkt. No. 44-41, ¶¶ 15, 16).  In August 2017, Plaintiff notified his physician that he "would lose his full-time job as of January 2018 if [he] did not have some kind of permanency [test]."  (Dkt. No. 52-10, p. 6).  Plaintiff underwent a Functional Capacity Examination on September 15, 2017.  (Dkt. No. 52-7).  The evaluator concluded that:

> Based on the results of this Functional Capacity Evaluation, I find that this [ ] patient gave good consistent effort.  Mr. Brian Clark presents with limitations in trunk active range of motion as well as limitations in hip/trunk flexibility and strength.  He also presents with decreased upper and lower extremity strength for functional lifting, carrying, pushing and pulling activities as well as decreased endurance to activity.  At this point in time, Brian Clark does not possess the required physical abilities to resume employment for Coca Cola as a Driver/Delivery person.  There is a light duty

> position of Product Checker that may be available which he could perform as he states this position does not require lifting, but this has not been confirmed.  Mr. Clark reports he has resumed physical therapy, which will assist in returning some of his physical strength and endurance for successful employment.

(Dkt. No. 52-7, p. 4).  The evaluator assessed that Plaintiff could sit for one hour at a time, stand for 30 minutes at a time, walk for 15 minutes at a time, and "lift 10lbs frequently, and 8lbs constantly." (*Id.*, pp. 3–4).

On November 22, 2017, a physician assistant cleared Plaintiff to return to work beginning on December 6, 2017.  (Dkt. No. 52-14, p. 2).  The note includes the following restrictions: "Back to work light duty December 6, 2017.  100% temp. Disabled until 12/6th, 2017.  No pushing, pulling, lifting greater than 20lbs occasionally." (*Id.*).

### C.  Reinstatement Efforts

On November 28, 2017, Plaintiff discussed his desire to return to work on light duty with Amy Johnson, Defendant's Warehouse Manager.  (Dkt. No. 44-27, pp. 54–56).  Ms. Johnson told Plaintiff that there were no light duty positions available at that time.  (Dkt. No. 44-42, ¶¶ 86, 90; 50-1, ¶¶ 86, 90).  Defendant claims that its representatives sent Plaintiff a letter on November 30, 2017 reminding him that his medical leave would expire in January 2018, and contacted him by telephone on December 12, 2017 with a further reminder, but Plaintiff denies receiving these communications.  (Dkt. Nos. 52-3, ¶¶ 68, 69; 53-1, ¶¶ 68, 69). According to Defendant, Plaintiff was not informed about any available positions because there were no positions that could "reasonably accommodate Plaintiff's restriction of no pushing, no pulling and no lifting over 20 lbs. occasionally."  (Dkt. No. 44-42, ¶¶ 86, 90, 91; 50-1, ¶¶ 86, 90, 91).

From September 29, 2017 through January 10, 2018, Defendant posted a number of positions for bidding, but Plaintiff did not bid on any of them.  (Dkt. Nos. 52-3, ¶ 21; 53-1, ¶

21).  Specifically, Defendant posted warehouse positions on the following days: October 6,
2017 (three positions), November 2, 2017 ("multiple positions"), and January 10, 2018
("multiple positions").  (Dkt. No. 44-10, pp. 11–13, 17–20).  Plaintiff claims that he did not
apply to these positions because "Defendant's representatives never advised him that such
positions were available for bidding."  (Dkt. No. 53-4, ¶ 21; *see also* Dkt. No. 44-2).  Plaintiff
inquired about various other positions (i.e. inventory checker and sales), which he was told were
not available when he inquired about them.  (Dkt. Nos. 52-3, ¶¶ 34, 39, 11; 53-1, ¶¶ 34, 39).
Plaintiff did not apply for any non-union positions.  (Dkt. Nos. 52-3, ¶ 33, 11; 53-1, ¶ 33).

On December 18, 2017, Plaintiff filed a grievance alleging that Defendant denied him
the right to return to light duty work and discriminated against him due to his disability.  (Dkt.
No. 52-16, p. 2).  Defendant denied Plaintiff's grievance on December 21, 2017, finding no
violation of the CBA or evidence of discrimination.  (Dkt. No. 52-17, pp. 2–3).  Rocco Losavio,
the business agent for the Teamsters Local 294, testified that the union ultimately decided not to
help Plaintiff pursue his grievance before the labor management panel because Plaintiff made
threats of violence to Defendant's employees.  (Dkt. No. 44-28, pp. 90–91).

Pursuant to the CBA, Plaintiff's seniority status and employment lapsed in early January
2018, two years after Plaintiff initially went out on medical leave.  (Dkt. Nos. 52-3, ¶¶ 10, 11;
53-1, ¶¶ 10, 11).  Then, on January 15, 2018, Plaintiff presented a physician's note to
Defendant, which updated Plaintiff's work limitations:

> This note is to verify that Mr Brian Clark is under my professional
> care. Effective 1/15/18, Mr Clark may return to work full time
> (maximum of 10 hours per day, 50 hours per week) with the
> following restrictions: No lifting greater than 50 lbs, no repetitive
> twisting or bending with lumbar spine, no climbing, no kneeling.

(Dkt. No. 52-18, p. 2).

On February 1, 2018, Defendant sent Plaintiff a termination letter, stating:

5

> This letter is in follow up to our conversation on January 17, 2018, in which we discussed the status of your leave of absence and your current medical restrictions. During our discussion it was advised that based on your current medical restrictions you are unable to perform the essential functions of your General Laborer role with or without a reasonable accommodations. As you have exhausted all leave options under the applicable bargaining agreement, your separation has been processed effective February 1, 2018.

(Dkt. No. 52-26, p. 2). Plaintiff never filed a grievance regarding the termination of his seniority rights or employment. (Dkt. Nos. 52-3, ¶ 30; 53-1, ¶ 30).

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party "has failed to make a sufficient showing on an essential element of [her] case with respect to which [she] has the burden of proof." *Celotex*, 477 U.S. at 323; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Upon cross motions for summary judgment, the Court must "in each case constru[e] the evidence in the light most favorable to the nonmoving party." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 621–22 (2d Cir. 2008) (quoting *White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 167 (2d Cir. 2007))

## IV.   DISCUSSION

Plaintiff moves for summary judgment on his ADA discrimination claim and failure to accommodate claims. (Dkt. No. 44-43). Specifically, Plaintiff contends that Defendant maintained a "100 percent healed policy" for injured employees to return to work, which he claims is "direct evidence of discrimination." (*Id.*, pp. 10–13). Plaintiff further claims that Defendant unlawfully discriminated against him because it failed to offer any reasonable

accommodation for Plaintiff's disability and did not engage in an interactive process to assess whether there were any jobs he could perform.  (*Id.*, pp. 14–25).

Defendant moves for summary judgment on all of Plaintiff's claims, arguing that: (1) Plaintiff cannot show that he was able to perform the essential functions of an available position with or without reasonable accommodation; (2) even if he could, Defendant terminated Plaintiff as a matter of contract pursuant to the CBA; and (3) Defendant did not retaliate against Plaintiff because of his protected activity, and only terminated his employment for a legitimate, work-related reason.  (*See generally* Dkt. No. 52-1).  The Court will assess each of Plaintiff's claims in turn.

### A. ADA Discrimination

"The ADA prohibits an employer from discriminating against an employee on the basis of a disability."  *Price v. City of New York*, 558 F. App'x 119, 120 (2d Cir. 2014) (citing 42 U.S.C. § 12112(a)).  "Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013).  Under that test, an employee must first establish a prima facie case of discrimination under the ADA.  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  Second, if the employee establishes a prima facie case, the burden shifts to the employer to "offer through the introduction of admissible evidence a legitimate non-discriminatory reason" for the adverse employment action.  *Id.*  Third, if the employer meets its burden, the plaintiff must then produce evidence and "carry the burden of persuasion that the proffered reason is a pretext."  *Id.*

### 1. Prima Facie Case

In order to establish a prima facie case of ADA discrimination, Plaintiff must show that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [his] employer; (3) [he] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [he] suffered an adverse employment action; and (5) the adverse action was imposed because of [his] disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (internal quotation marks and citations omitted). "Under the last element, a plaintiff must show that the adverse employment action took place under circumstances giving rise to an inference of discrimination." *Id.*

There is no dispute as to three of these elements: that Defendant is subject to the ADA, that Plaintiff suffers from a disability within the meaning of the ADA, and that his termination is an adverse employment action. (*See generally* Dkt. Nos. 44-43, 52-1). Therefore, the only remaining questions as to the prima facie case are whether Plaintiff could perform essential functions of an available position with or without accommodation, and whether Defendant terminated Plaintiff because of his disability.

### a. Essential Functions

The parties dispute whether Plaintiff was able to perform essential functions of the job with or without reasonable accommodation. Plaintiff claims that he "was qualified to perform the essential functions of various positions, with or without accommodation, that were available at the Defendant's warehouse during the period between October 2017 to January 2018." (Dkt. No. 44-43, p. 17). Specifically, Plaintiff claims he was qualified and able to perform warehouse jobs, including "truck jockey" and "inventory checker." (*Id.*, pp. 18–20). In response, Defendant contends that Plaintiff was not able to perform the essential tasks required for work in the warehouse, with or without reasonable accommodation, and moreover, there were no

available positions during the relevant period.  (Dkt. No. 50, pp. 17–20; *see also* Dkt. No. 52-1, pp. 10–22).

Plaintiff "bears the burden of production and persuasion on the issue of whether he is otherwise qualified to perform the essential functions of a job."  *Pesce v. New York City Police Dep't*, 159 F. Supp. 3d 448, 456–57 (S.D.N.Y. 2016).  The "essential functions" of a position "means the fundamental job duties of the employment position," but does not include "the marginal functions of the position."  *Atencio v. U.S. Postal Serv.*, 198 F. Supp. 3d 340, 356 (S.D.N.Y. 2016) (citation omitted).  "In determining whether a particular function is essential, courts consider, among other things, '[t]he employer's judgment as to which functions are essential,' '[w]ritten job descriptions,' and '[t]he amount of time spent on the job performing the function.'"  *Id.* (quoting 29 C.F.R. § 1630.2(n)(3)).  "A court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position."  *Id.* (quoting *D'Amico v. New York City*, 132 F.3d 145, 151 (2d Cir. 1998)). "[U]ltimately, the question whether a task constitutes an essential function depends on the totality of the circumstances."  *Id.* (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004)).

Here, the record shows that Plaintiff was 100 percent disabled, and thus unable to return to any position at Defendant's Albany Sales Center until at least December 6, 2017.  (Dkt. No. 52-14, p. 2).  Thereafter, according to Plaintiff's medical clearance, he was still limited to jobs which involved "no pushing, pulling, [or] lifting greater than 20 lbs occasionally."  (*Id.*).  And Plaintiff remained under those limitations until January 15, 2018, when his work restrictions were updated to: "No lifting greater than 50 lbs, no repetitive twisting or bending with lumbar spine, no climbing, [and] no kneeling."  (Dkt. No. 52-18, p. 2).

It is undisputed that the "general warehouse worker" position required employees to, *inter alia*, "have the ability to repetitively lift, push and pull 50+ pounds, reach overhead height, squat, kneel, bend and reach," and "have the ability to push and pull manual and powered material handling equipment . . . containing product loads a minimum of 100 yards without assistance." (Dkt. No. 44-2, p. 2). Defendant assigns warehouse workers to more specialized functional assignments, including order builder, inventory checker and truck jockey, and each of these roles generally require the same physical demands. (*Id.*, pp. 2–4; *see also* Dkt. No. 44-26, pp. 25–26). Notably, of the products stored in Defendant's 70,000 square foot warehouse, 155 weighed over 20 pounds and five weighed over 50 pounds. (*See* Dkt. No. 44-16, pp. 7–11; Dkt. No. 44-42, ¶ 57; Dkt. No. 50-1, ¶ 57).

Moreover, according to Meghann Devine, the General Manager at the Albany Sales Center, Defendant requires all warehouse employees to be able to perform any of the essential functions of the warehouse position. (Dkt. No. 50-8, ¶ 21; *see also* Dkt. No. 44-26, pp. 36–37, 51). Amy Johnson, a supervisor at the Albany Sales Center, also testified that "each employee was considered a general laborer," and that all warehouse positions required employees to lift a minimum of 50 pounds. (Dkt. No. 44-27, pp. 37, 57). And Plaintiff himself acknowledged that he was not aware of any bargaining unit jobs that could be performed by someone with a 20-pound lifting restriction. (Dkt. No. 44-22, pp. 93–94). Based on this evidence, the Court concludes that lifting, pulling, and pushing of at least 50 pounds was an essential requirement of the general warehouse position, and of each of the subfunctions Plaintiff claims he could have performed.

Plaintiff claims that certain "functions of these positions were not essential because they could have been easily reassigned to other warehouse team members to accommodate [his] disability." (Dkt. No. 44-43, pp. 17–18). But contrary to Plaintiff's theory, the ADA does not

require Defendant to create a new light duty position for Plaintiff, and Defendant was also not required to eliminate any essential job functions (i.e. lifting, pushing, pulling more than 50 pounds) as a reasonable accommodation. *See McMillan*, 711 F.3d at 127; *see also Frantti v. New York*, 414 F. Supp. 3d 257, 286 (N.D.N.Y. 2019) ("A reasonable accommodation can never involve the elimination of an essential function of a job, or result in a promotion to a position for which the employee is unqualified. Nor is an employer required to create a new position as an accommodation.") (citations omitted). Thus, Defendant was not obligated to reassign to other workers the essential function of lifting, pulling, and pushing of at least 50 pounds. Accordingly, based on the undisputed facts, the Court concludes that Plaintiff has failed to demonstrate that he could perform the essential functions of any of the warehouse positions before his term of employment expired under the CBA. *See, e.g.*, *Francis v Wyckoff Heights Med. Ctr.*, 117 F. Supp. 3d 754, 771–75 (E.D.N.Y. 2016) (granting summary judgment for the defendant where the evidence showed that "heavy lifting and pushing were essential functions" of the job and the plaintiff failed to show that she was capable of performing those requirements or that other light duty assignments were available).

Further, regardless of whether Plaintiff was able to perform the essential functions of any warehouse position, Defendant has demonstrated that there were no available positions between the time Plaintiff was cleared to return to work and when his medical leave expired. (*See generally* Dkt. No. 50-8, ¶¶ 4–21; Dkt. No. 44-27, pp. 57–58). Plaintiff's claims to the contrary are entirely speculative and not supported by the documentary evidence.[2] Notably,

---

[2] Plaintiff points to several "vacant" or "open" positions on Defendant's seniority list, but there is no evidence whatsoever that Defendant ever solicited bids for these positions when Plaintiff was eligible for employment under the CBA, cleared to work by his doctor, and capable of performing the essential functions of the positions. (*See* Dkt. No. 44-42, ¶¶ 99–113; *see also* Dkt. No. 44-27, p. 58; Dkt. No. 44-28, pp. 84–85).

Plaintiff testified that he never applied for any union *or* nonunion positions whatsoever.  (Dkt. No. 44-22, pp. 21, 32–34).  According to Ms. Devine and Ms. Johnson, if a union employee wanted to apply for a nonunion position, they would need to leave the union, and then apply and interview for the nonunion position.  (Dkt. No. 44-26, p. 56; Dkt. No. 44-27, p. 34).  Union members interested in open union positions were required to bid on them.  (Dkt. No. 44-27, p. 35).  The record contains no evidence whatsoever that Plaintiff ever applied for any position in the relevant time period, and Plaintiff himself testified that he inquired about returning to work on light duty, but never submitted an application or bid for an available position after he was informed that no light duty positions were available.  (Dkt. No. 44-22, pp. 21, 32–34, 162).

Simply put, Plaintiff has failed to provide any evidence to show that there were positions available, regardless of Plaintiff's need for accommodation.  (*See* Dkt. No. 44-27, p. 58; Dkt. No. 44-28, pp. 84–85).  The Court thus finds that Plaintiff has failed to meet his burden to show that he was able to perform the essential functions of an available position, and therefore his ADA discrimination claim must be dismissed.  *See Barton v. Unity Health Sys.*, 768 F. App'x 83, 85 (2d Cir. 2019) (recognizing that it is the plaintiff's burden to show that "a suitable vacancy of the sort [he] proposes existed at the time [he] sought transfer") (quoting *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 567 (2d Cir. 2000)); *Booker v. Soho Studio Corp.*, No. 17-CV-5426, 2020 WL 363912, at *4–5, 2020 U.S. Dist. LEXIS 10660, at *11–13 (E.D.N.Y. Jan. 22, 2020) (dismissing the plaintiff's discrimination claim where it was undisputed that he was unable to meet the essential lifting functions of the warehouse job at the time his medical leave expired).

### b.  Inference of Discrimination

Plaintiff has also failed to adduce evidence to permit an inference that his termination took place under circumstances giving rise to an inference of discrimination.  On this point, Plaintiff argues that Defendant's "return to work policy required the employee to return on 'full duty,' which meant that the employee needed to be able to perform all the job - - all the essential duties of their job description." (Dkt. No. 44-43, p. 11).  Plaintiff claims that Defendant's policies amounted to a "100 percent healed" requirement, which he asserts was a "per se" violation of the ADA.  (*Id.*).  Plaintiff further asserts that "Defendant terminated [him] because he could not return to work without any medical restrictions," and "Defendant cannot show that any of the available accommodations requested by [Plaintiff] would constitute undue hardship."  (*Id.*).

However, the record shows that Defendant did not maintain a "100 percent healed" policy for injured employees to return to work.  Rather, Lucia Cunningham, Defendant's workers' compensation specialist, stated that Defendant's "full duty" policy simply required an employee to be able to perform "all essential duties of their job description."  (Dkt. No. 44-25, pp. 28–29).  Ms. Cunningham testified that an employee's ability to perform a specific job was based on an individualized assessment of the person's physical work restrictions and their essential job functions.  (Dkt. No. 44-25, pp. 48–50).  Ms. Cunningham stated that a hypothetical employee's 25-pound lifting restriction would prevent them from working in a job with a 50-pound lifting requirement, but would not limit them from a desk job.  (*Id.*, p. 49).

Melissa Szymanowski, Defendant's Director of Human Resources, also testified that Defendant's policy was that an employee with a disability who wanted to return to work would "have to be capable with or without accommodations, and there has to be a position available, and they would have to bid on that position per the collective bargaining agreement."  (Dkt. No.

44-24, pp. 58–59).  Ms. Szymanowski testified that in reviewing an accommodation request, Defendant would "review[] the job description, see what the restrictions are, having conversation [sic], looking at the essential functions, and then seeing if . . . the company could make changes . . . for that position and then make accommodations in that manner."  (*Id.*, pp. 59–60).  Ms. Szymanowski stated that an injured employee would be returned to a position temporarily, in accordance with their physical capabilities, until their condition improves "if there is meaningful work to do there."  (*Id.*, p. 64).  She testified that any work restriction identified by a physician would not be an impediment to the employee's return to work, and that Defendant did not require employees to be free of medical restrictions before returning to work.  (*Id.*, pp. 66, 75).[3]

In sum, the record shows that Defendant's policy required an employee returning to work to be capable of "full duty," meaning only that he could perform the essential functions of the job, with or without reasonable accommodation.  Plaintiff's argument to the contrary is based on an entirely speculative interpretation equating "full duty" with "100 percent healed," a correlation that was repeatedly rejected by employees with personal knowledge, including Ms. Cunningham.  (*See* Dkt. No. 44-5, p. 11; Dkt. No. 44-25, pp. 28, 48).  Therefore, Plaintiff's theory of a discriminatory "100 percent healed" policy is not supported by the evidence, and does not support an inference of discrimination.

---

[3] Further, the Court notes that Meghann Devine, the General Manager of the Albany Sales Center, testified that Plaintiff would have been returned to work if he "had been able to perform the essential functions of an available position either with or without reasonable accommodation and without undue hardship and was otherwise qualified . . . ."  (Dkt. No. 50-8, ¶ 4).  She affirmed that "[t]he term 'full duty' in the context of transitional work policy refers to employment at an existing position paid at the regular wage rate," whereas light duty positions were paid at a minimum wage, with "[t]he difference between minimum wage and the employee's wage [ ] paid by [Defendant's] workers' compensation carrier."  (*Id.*, ¶¶ 23–24).

## 2.  Legitimate, Non-Discriminatory Reason

Even if Plaintiff could establish a prima facie case of disability discrimination, Defendant has met its burden to demonstrate a legitimate, non-discriminatory reason for terminating his employment.  In the termination letter, Defendant stated in relevant part: "based on your current medical restrictions you are unable to perform the essential functions of your General Laborer role with or without a reasonable accommodations.  As you have exhausted all leave options under the applicable bargaining agreement, your separation has been processed effective February 1, 2018."  (Dkt. No. 52-26, p. 2).  Defendant also points to evidence that there were no available positions for Plaintiff to return to between his medical clearance on December 6, 2017 and the expiration of his twenty-four-month medical leave on January 9, 2018.  (*See* Dkt. Nos. 50, pp. 19–20; 52-1, pp. 22–23).  Moreover, Defendant cites the undisputed fact that Plaintiff never applied to any union or nonunion positions, as well as contemporaneous statements from its human resources department, which informed Plaintiff that there were no light duty positions available.  (Dkt. No. 52-1, p. 23).  Upon review of the record, the Court finds that this evidence supports Defendant's contention that Plaintiff was terminated because he could not return to his warehouse position and he exhausted the term of his medical leave—a legitimate, non-discriminatory reason for termination.  Therefore, Defendant has satisfied its burden at the second step, and the burden now shifts back to Plaintiff to show that these reasons were pretextual and that disability discrimination was the but-for cause of his termination.

## 3.  Pretext and But-For Causation

A plaintiff's burden at the third step of the *McDonnell Douglas* analysis is to "show that the [defendant's] proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's

proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more." *Sista*, 445 F.3d at 173 (citation omitted).  Generally, to demonstrate pretext, a "plaintiff may rely on evidence comprising [their] prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013).  In addition, to survive summary judgment the plaintiff must show a genuine issue of fact that his disability was the but-for cause of the adverse action.  *See Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019) (noting that "the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action").

After careful review of the record, the Court finds that Plaintiff has failed to meet his burden at the third stage of the analysis.  Plaintiff's conclusory allegation that he was terminated due to his disability is not enough to overcome Defendant's well-documented non-discriminatory reasons for the decision in this case.  As noted above, the record shows that lifting 50 pounds was an essential function of any warehouse job, and Plaintiff could not lift more than 20 pounds until after his two-year medical leave under the CBA had lapsed.  (*See* Dkt. No. 52-14, p. 2; Dkt. No. 52-18, p. 2).  It is undisputed that Plaintiff requested a return to work on light duty, but no such positions were available.  (*See* Dkt. No. 44-5, p. 10; Dkt. No. 44-27, p. 58; Dkt. No. 44-28, pp. 84–85).  And the record also shows that Defendant never applied for any nonunion jobs, and never bid on any union jobs at any time after he left work on medical leave in January 2016.  (Dkt. No. 44-22, pp. 21, 32–34, 162).  As discussed above, Plaintiff's "100 percent healed" theory is baseless, and he has not pointed to any evidence in the record suggesting discriminatory intent or animus.

17

In sum, Plaintiff has failed to adduce evidence that reasonably supports a finding of discriminatory intent and that his disability was the but-for cause of the termination of his employment.  Rather, Defendant's explanation that Plaintiff was terminated because his medical leave had expired and he had not applied for any available position is consistent throughout the record, and Plaintiff's unfounded speculation does not raise an issue of fact that these reasons were pretextual.  Accordingly, Plaintiff's ADA intentional discrimination claim must be dismissed.  *See Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 142–46 (E.D.N.Y. 2015) (granting summary judgment for defendant where plaintiff put forth "no evidence [ ] from which discrimination could be inferred"); *Cady v. Bolivar-Richburg Cent. Sch. Dist.*, No. 12-CV-1121, 2016 U.S. Dist. LEXIS 164650, at *39–44, 2016 WL 8291111, at *10–11 (W.D.N.Y. Nov. 28, 2016) (granting summary judgment where plaintiff failed to produce any evidence that defendant's reduction of plaintiff's position to part-time was pretextual disability-based discrimination).

**B.  Failure to Accommodate**

As to Plaintiff's ADA accommodation claim, Plaintiff argues that he is entitled to summary judgment because Defendant knew about his disability and "failed to engage in an interactive process to identify any reasonable accommodation [for him]."  (Dkt. No. 44-43, pp. 14–25).  In contrast, Defendant argues that Plaintiff's claim fails for the same reasons as his intentional discrimination claim—namely that there were no available positions, and even if there were, Plaintiff was unable to satisfy the essential functions of the job.  (Dkt. No. 52-1, pp. 10–23).

To maintain a failure to accommodate claim under the ADA, the plaintiff "must show that: (1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the

18

employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Lazzari v. NYC Dep't of Parks and Recreation*, 751 F. App'x 100, 102 (2d Cir. 2018) (citing *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015)).  A "reasonable accommodation" is a modification "to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable[s] an individual with a disability who is qualified to perform the functions of that position." *Atencio*, 198 F. Supp. 3d at 356 (quoting 29 C.F.R. § 1630.2(o)(1)(ii)).

Here, Plaintiff's accommodation claim fails because, as discussed above, there were no available positions and Defendant was not required to reassign essential functions of the warehouse position to accommodate Plaintiff's limitations.  To the extent Plaintiff argues that Defendant could have eliminated certain tasks to accommodate his disability, it is well established that the ADA does not require an employer to create a new position or so restructure a plaintiff's job in a way that shifts essential tasks to other employees.  *See Graves v. Finch Pruyn & Co. Inc.*, 457 F.3d 181, 187 (2d Cir. 2006).  And although Plaintiff claims that Defendant failed to engage in the interactive process, the record shows that Defendant informed Plaintiff that there were no light-duty positions available and it was not feasible to alter the essential functions of the general warehouse position.  *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000) ("At the very least . . . an employee who proposes an accommodation . . . triggers a responsibility on the employer's part to investigate that request and determine its feasibility.").  Aside from Plaintiff's request for light duty, which was not a reasonable accommodation under the circumstances, there is nothing in the record indicating other appropriate accommodations that would have enabled Plaintiff to perform the essential functions of any available position.

Accordingly, Plaintiff has failed to adduce facts that would permit a rational factfinder to conclude that he could perform the essential functions of an available position with reasonable accommodation.  Therefore, his failure to accommodate claim must be dismissed. *See Davidson v. LaGrange Fire Dist.*, 523 F. App'x 838, 839 (2d Cir. 2013) ("[Plaintiff] also contends that defendants failed to accommodate her by giving her a light duty position. [Plaintiff] has failed to demonstrate, however, that there were any light-duty positions available . . . and our case law makes clear that defendants were not required to create a new position to accommodate [her]."); *Davis v. N.Y.C. Health & Hosps. Corp.*, 508 F. App'x 26, 29 (2d Cir. 2013) (finding that a proposed accommodation that would excuse a nurse from essential patient care duties, including "lifting a patient" and "pushing a wheelchair or stretcher" was not reasonable).

### C. ADA Retaliation

Plaintiff also alleges an ADA retaliation claim on the basis that he suffered reprisal—termination of employment—for requesting reasonable accommodation for his disability and for filing a grievance.  (Dkt. Nos. 1, pp. 10–12).  In response, Defendant argues that Plaintiff cannot show that his requests and grievance were the but-for cause of his termination.  (Dkt. No. 52-1, pp. 24–25).

Retaliation claims brought under the ADA are examined under the three-step *McDonnell Douglas* burden-shifting framework.  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).  At the first step, Plaintiff must establish a prima facie case, which requires a *de minimus* showing of: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Wright v. City of Syracuse*, 611 F. App'x 8, 11 (2d Cir. 2015) (quoting *Hicks*, 593 F.3d at 164).  "Once a plaintiff establishes a

prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision." *Treglia*, 313 F.3d at 721. "If a defendant meets this burden, 'the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.'" *Id.* (quoting *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)).

Here, it is undisputed that Plaintiff engaged in protected activity by requesting an accommodation and filing a grievance, that Defendant was aware of it, and that Plaintiff suffered an adverse action when his employment was terminated. (*See* Dkt. No. 52-1, pp. 24–25; Dkt. No. 53, pp. 20–22). The remaining issue is whether there is a causal connection between Plaintiff's protected activity and adverse action. Plaintiff points to evidence that he was terminated on January 17, 2018—soon after his request for accommodation (i.e. light duty) on November 28, 2017 and his grievance on December 18, 2017. (*See* Dkt. No. 53, pp. 21–22). Given Plaintiff's *de minimus* burden at this stage, the Court finds this temporal proximity sufficient to make out a prima facie case of retaliation.

Next, the Court again finds that Defendant's proffered reason for terminating Plaintiff's employment—the lapse of his medical leave and employment rights under the CBA and the lack of available positions—is a legitimate, non-retaliatory basis for Plaintiff's termination.

However, Plaintiff's retaliation claim fails at step three of the analysis, for the same reasons discussed above. Simply put, Plaintiff has presented no evidence, aside from temporal proximity, to draw a connection between his request for accommodation and filing of a grievance with Defendant's decision to terminate his employment. And it is well settled that temporal proximity alone is not sufficient to demonstrate but-for causation. *Zann Kwan*, 737 F.3d at 847 ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage."). Further, Plaintiff has failed to present evidence to rebut or cast doubt on

Defendant's well-documented rationale for terminating his employment: that he was unable to return to work and meet the essential requirements of an available position by the end of the medical leave period provided in the CBA.  (*See* Dkt. Nos. 44-5, p. 8; 52-26, p. 2; 52-32, p. 2).

In sum, viewing the evidence in the light most favorable to Plaintiff, a jury could not reasonably find that Defendant's stated reasons were pretextual and that Plaintiff's protected activity was the but-for cause of his termination.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADA retaliation claim.  *See Widomski v. State Univ. of New York at Orange*, 933 F. Supp. 2d 534, 553 (S.D.N.Y. 2013) (dismissing the plaintiff's ADA retaliation claim where her claim relied solely on temporal proximity and the plaintiff otherwise failed to rebut the defendant's legitimate, non-discriminatory justification for the plaintiff's termination); *Tillman v. Verizon New York, Inc.*, 118 F. Supp. 3d 515, 541–43 (E.D.N.Y. 2015) (dismissing the plaintiff's ADA retaliation claim where there was "no evidence in the record to suggest that [the defendant's] decision to require [plaintiff] to obtain full-duty clearance was causally connected to her alleged request for an accommodation.").

### D.  State Law Claims

Finally, having found that all of Plaintiff's federal claims are subject to summary judgment, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.") (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998).  Accordingly, Plaintiff's state law claims against Defendant are dismissed.

## V.    CONCLUSION

For these reasons, it is

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 44) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 52) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED with prejudice**; and finally, it is

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Date:    November 20, 2020
            Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge